## THE BUZZARD.

## MUNSON S. S. LINE v. MOBILE TOWING & WRECKING CO.

### No. 2210.

District Court, S. D. Alabama.
April 15, 1932.

Pillans, Cowley & Gresham, of Mobile, Ala., for libelant.

Smith & Johnston, of Mobile, Ala., for claimant.

ERVIN, District Judge.

This is a libel to recover the damage caused by the breaking of one wing of the ship's propeller under the following facts:

The ship was in a dry dock in Mobile, and the Mobile Towing & Wrecking Company was employed to take her out of the docks and move her to her loading berth in the Mobile river.

The docks were on the west side of the Mobile river in a bend of the river, the slips opening on the river, pointing somewhat down the river. Two tugs were sent to do the work, one to tie to the bow of the ship and help pull her out and then head her up stream, the other, the Buzzard, to lie at or near a cluster of pilings, some 103 feet off and on line with the south side of the dock. The instructions given by the pilot to the Buzzard were to lie by the piling and keep the ship off them, and then to lash alongside and pull back to keep the ship from running into the east bank, and then help tow her to the loading berth. The pilot also told the Buzzard to pass his best line, which was an 8-inch line, to the ship. The tug then requested that the ship have men ready to receive the line. At the time, the tide was slowly ebbing and no wind. When the ship cleared the docks, her stern swung down and the propeller struck the piling, breaking off about 3 feet of one of the blades.

When the ship was coming out, the tug threw the heaving line to the ship, and only one man took hold of it and passed it through the chock and pulled it up until the wire loop on the end of the backing line came to the chock, and then was apparently unable to get it through so as to make it fast, ultimately another man came to his assistance, and the line was hauled through the chock and made fast.

When the trouble occurred in passing the wire loop through the chock, the tug slowly drifted astern the ship, and then backed away and ultimately came up to the ship's side, which was then moving about one to two knots, at an angle of 30 or 40 degrees, pointing toward her stern, and tried to press the ship away from the piling, but slid along her side until about to pass under her counter, and then backed out. The southern side of the slip extended some feet east of the piling, and was about 82 feet south of the piling.

About the time the tug backed away from the approaching counter of the ship, the collision between the propeller and the piling took place. Had the ship put two or more men to handle the line thrown to her by the tug, all the evidence shows the tug would have been able to press the ship away from the piling.

Did the tug have the ability to press her away after she knew the line would not be made fast? After the heaving line had been thrown on the ship and by the time the tug drifted abreast of the chock, it saw the line could not be used. It had been told especially to keep the ship off the piling, and, while the pilot told him to pass his big line, he was not limited by any instructions as to how he should keep her off, so, if one method failed, it was his duty to try another.

Had the tug, when it backed away from the ship, so maneuvered as to come back to the ship at from 70 to 90 degree angle, the large rope fender, or pudding, as it is called, would no doubt have held against the ship's side so that it could have pressed her off 1 or 2 feet and saved the collision. Or, had the tug put her bow alongside the piling, this would have prevented her from slipping on the ship's side as she went ahead, and would no doubt have prevented the collision.

Conceding that the failure of the ship to properly handle the line caused an emergency, still it was the duty of the tug to try and meet this emergency, and I do not find from the evidence that he made any real attempt to do it. It won't do to merely say the pilot told him to pass the big line and the ship failed to handle it when he did so. He knew he was placed there with express instructions to keep the ship off the piling, so he should be prepared to use other methods, if one failed.

It is probable that one foot more of clearance would have avoided the collision. I am satisfied that proper handling of the line by the ship would have prevented the collision. I also feel that proper effort thereafter on the part of the tug would probably have prevented it, but I am not positive as to that. If I were fully satisfied that proper effort by the tug would have prevented the collision, I would decree for libelant. If, on the other hand, I were convinced such effort would be futile, I would decree for claimant.

Finding fault on both sides, a decree will be entered dividing the damages.